ELDON FRICKE, APPELLANT, V. HAROLD HART AND MILDRED L. HART, DOING BUSINESS AS HART CONSTRUCTION COMPANY, APPELLEES.

294 N. W. 2d 737

Filed July 1, 1980. No. 42825.

Edward Asche and Ray C. Simmons, for appellant.

Tessendorf, Milbourn, Fehringer & Bothe, P.C., and Otradovsky & Bieber, for appellees.

Heard before BOSLAUGH, BRODKEY, and HASTINGS, JJ., and BUCKLEY and WINDRUM, District Judges.

WINDRUM, District Judge.

This action prayed that a sale of heavy equipment from the defendants to the plaintiff be canceled and decreed to be null and void and that, upon such cancellation, plaintiff have judgment against the defendants and each of them for the purchase price of said heavy equipment. The defendants filed a motion for summary judgment which was sustained by the District Court for Colfax County, Nebraska, and the plaintiff has appealed.

Plaintiff's petition alleged that, on May 7, 1978, the plaintiff and defendants entered into an oral contract under the terms of which plaintiff purchased from the defendants an M. L. 309 Lorain loader without the cab and paid the defendants $30,000. That, at the time of the sale, the defendants represented and warranted to the plaintiff: (a) That said machine was in good shape and ready to go to work; (b) That the same did not use any oil; (c) That a new machine would cost $160,000; and (d) That the purchaser would be furnished the names of 20 persons who were desirous of having work done by said machine.

In the petition and in a deposition, the plaintiff claimed that, right after he purchased said loader and paid for the same, he requested the names of the 20 persons who sought work but was unable to receive said list. Furthermore, right after the purchase, he discovered that the machine was leaking more oil than he expected; the handbrake did not work; the cylinders were not operational; the bucket kept dropping; the hoist was difficult to control; the right-hand rear wheel was wobbling back and forth; and the steering cylinder was wobbling in and out. Plaintiff further claimed, in his petition, that the machine was unsafe to operate.

The separate answers of each of the defendants consisted of general denials.

It is undisputed that, in the early part of May 1978,

plaintiff heard that the defendants had a loader for sale. He called to inquire concerning same and talked to defendant Mildred Hart. Shortly thereafter, defendant Harold Hart called the plaintiff from Greeley, Colorado, and they discussed the sale. Harold told the plaintiff that the machine was "in good shape and ready to go to work, except for the cylinders"; that one cylinder leaked oil a little bit and just needed a little packing and that the defendant would supply the packing. The next day, Harold Hart called again and, in that conversation, stated that he would give plaintiff 20 names of well-paying customers he could go to work for.

When the plaintiff went to the home of the defendants to look at the machine, Mildred Hart stated that the machine was a "good old faithful machine in good condition." On May 7, 1978, plaintiff paid the defendants $30,000 and asked for the names of the 20 people to go to work for. Mildred Hart said she had already turned the names over to Ernest Sayers, who leased another machine belonging to the defendants. Mildred suggested that he could get work in his own area and he wouldn't have to drive so far. Nevertheless, there is no dispute that the 20 names were not then given to the plaintiff and, as a matter of fact, had already been given to Mr. Sayers.

Up to this time, the plaintiff had examined the machine, but had never started the engine. On May 10, he and his son went back to the home of the defendants to pick up the machine. The plaintiff started the machine and raised the hoist. He noticed that the brake was unhooked and he had some trouble with the bucket of the machine. While the plaintiff was driving the machine, his son, who was following behind in a car, noticed that the right rear wheel and the steering cylinder were wobbling. Nevertheless, the plaintiff did a day's work with the machine during which time he had trouble with the bucket. He then unsuccessfully attempted to sell

the machine at a profit. On May 13, he returned the machine to the home of the defendants and demanded return of the purchase price.

None of the above facts are in dispute.

A motion for summary judgment is not a substitute for a demurrer or a motion for a directed verdict. *Jirka v. Prior,* 196 Neb. 416, 243 N.W.2d 754 (1976). Therefore, one must examine the evidence to determine whether or not the plaintiff is able to prove the allegations of his petition.

The motions for summary judgment of the two defendants did not state the basis therefor, nor did the summary judgments entered by the court. Broadly speaking, in order to sustain the motions for summary judgment in this case, the trial court had to find that there was no genuine issue of fact concerning three areas, and that the plaintiff would be unable to prove any of three basic allegations, to wit, (1) That the defendants represented and warranted to plaintiff as to the condition and usability of the machine and its value and the furnishing of names; (2) There was a breach of the representation and warranties as to the condition and usability of the machine and its value and the furnishing of names; and (3) Because of such breach of representation and warranties, the plaintiff attempted to cancel the sale and offered to return the loader and did, in fact, return it and demanded that the defendants return to plaintiff the $30,000 he had paid for the machine.

There would be sufficient evidence to support a finding that an express warranty was made by the sellers when they stated to the buyer that the machine was "a good old faithful machine in good condition" and that the machine was "in good shape and ready to go to work." Nebraska U.C.C. § 2-313 (Reissue 1971). Similarly, there is sufficient evidence that plaintiff was told he would receive 20 names of prospective customers and that a similar new machine would cost $160,000.

A positive statement of a seller of the condition of personal property made during negotiations for its sale which indicates an intention to be bound by the truth thereof and which was so understood and relied upon by the other party, is an express warranty. *Garbark v. Newman,* 155 Neb. 188, 51 N.W.2d 315 (1952).

Where a purchaser receives what he purchased, and bases his right to rescind on a false representation of its quality or condition, or another matter affecting its value, he must show that the representation was material and that he was misled thereby to his damage. *Garbark v. Newman, supra.*

If a representation is likely to affect the conduct of a reasonable person with reference to a transaction with another person, it is generally material to the contract, and if it is material to the transaction entered into by a person deceived thereby, it is assumed, in the absence of a showing to the contrary, that the transaction was induced by the misrepresentation. *Garbark v. Newman, supra.*

A person is justified in relying upon the representation made to him in all cases when it is a positive statement of fact and if an investigation would be required to discover the truth. *Garbark v. Newman, supra.*

It is undisputed that the plaintiff attempted to cancel the sale, offered to return the loader, and demanded the purchase price therefor.

The remaining broad issue then, is whether or not there was a breach of representation and warranty as to the condition and usability of the machine and its value and as to furnishing the names.

This case would seem to be controlled by *Green v. Village of Terrytown,* 189 Neb. 615, 204 N.W.2d 152 (1973). In that case, the court said at 617-19, 204 N.W.2d at 154-55:

> The moving party is not entitled to summary judgment except where there exists no gen-

uine issue as to any material fact in the case and where under the facts he is entitled to judgment as a matter of law. § 25-1332, R. R. S. 1943; Illian v. McManaman, 156 Neb. 12, 54 N. W. 2d 244. The burden is upon the party moving for the summary judgment to show that no issue of fact exists, and unless he can conclusively do so, the motion must be overruled. Johnson v. Metropolitan Utilities Dist., 176 Neb. 276, 125 N. W. 2d 708. Upon a motion for summary judgment the court examines the evidence, not to decide any issue of fact, but to discover if any real issue of fact exists. Johnson v. Metropolitan Utilities Dist., *supra*. In considering a motion for summary judgment the court views the evidence in the light most favorable to the party against whom it is directed, giving to that party the benefit of all favorable inferences that may reasonably be drawn therefrom. Johnson v. Metropolitan Utilities Dist., *supra*.

The motion for summary judgment was improperly sustained for at least two reasons. First, although there were before the court no conflicting evidentiary facts, the ultimate inferences to be drawn from those facts are not clear. Second, since those inferences are not conclusively established it cannot be determined whether the defendant is entitled to judgment as a matter of law.

. . . .

What we have said before disposes of the contention of the defendants that it was the duty of the plaintiff to present some evidence to contradict that of the defendants, otherwise the motion should be sustained. This position overlooks the nature of the moving party's burden. It is only where the mo-

vant's evidence establishes, taken at its apparent face value, that there is no genuine issue of fact and that under the evidence he is as a matter of law entitled to judgment, that the party against whom the motion is made has some duty of coming forth with contradictory evidence. See Miller v. Aitken, 160 Neb. 97, 69 N. W. 2d 290.

The defendants adduced no evidence whatsoever as to the effect of the wobbling wheel, the wobbling of the steering mechanism, and the disrepair of the handbrake. Therefore, plaintiff was not required to adduce any evidence concerning those issues. While the evidence was clear the machine was sold with the express understanding by all that a hydraulic cylinder leaked and needed repacking, there is a total lack of evidence that the leaking was the sole cause of the difficulty in operating the bucket on the loader, both at the time the plaintiff picked up the machine, and during the one day's dirt work accomplished by the plaintiff. Defendants merely assume that, because the cylinders were leaking, the leak was the sole cause of all the difficulty. It is possible that the plaintiff could adduce evidence sufficient to convince a jury otherwise.

As the plaintiff states in his brief:

Summary judgment was entered against the plaintiff, based upon the depositions. For such a judgment to be justified it would be necessary for the record to show that in spite of the petition allegations the deposition testimony showed that plaintiff could not prove his case. Either that the representation and warranties claimed were not made to him, contrary to the petition; or that the representations and warranties were not breached, contrary to the petition allegations. The only way that the defendants would be entitled to a summary judg-

ment would be if the deposition testimony showed that the plaintiff would be unable to prove one or more of the foregoing essential features.

The defendants have not shown that the plaintiff would be unable to prove either that there were representations and warranties made on which the plaintiff relied to his detriment, or that they were not breached. Therefore, the plaintiff has no duty to come forth with evidence that he can prove those allegations. *Green v. Village of Terrytown, supra.*

Defendants' brief raises an issue of inspection which would eliminate the issue of implied warranty and raises the issue of acceptance. If said matters are germane, suffice to say that the evidence adduced on the motions for summary judgment did not establish that plaintiff could not prove the allegations of his petition, and overcome any evidence concerning inspection and acceptance. Likewise, defendants allude to a written memorandum, call it a contract of sale, and argue that since it did not contain language relative to an express warranty, express warranty cannot be relied upon by the plaintiff. If germane, the question of whether the written memorandum was merely a bill of sale, a receipt, or the full agreement is for a jury to determine. Defendants did not conclusively establish that the memorandum was a contract between the parties.

The motions for summary judgment should have been overruled. The cause is remanded for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.