DAVID M. HAYES, APPELLEE, V. EQUINE EQUITIES, INC., APPELLANT, AND JOHN P. CHUDY, APPELLEE.

480 N.W.2d 178

Filed February 14, 1992.   No. 89-705.

Frederick S. Cassman, of Abrahams, Kaslow & Cassman, for appellant.

Reed A. Grandgenett, of Gaines, Mullen, Pansing & Hogan, for appellee Hayes.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

This action arose out of a controversy concerning the sale of an interest in a registered quarter horse gelding named "Chocolate Marquis" by the defendant Equine Equities, Inc., to the plaintiff, David M. Hayes. The plaintiff sought to rescind his purchase and recover his cash payment of $22,000, together with his equity in a "trade-in" quarter horse named "Smokeys Gray Too." The trial court found that the defendant John P. Chudy had made fraudulent representations to Hayes and that Hayes was entitled to a rescission of his purchase of Chocolate Marquis, a return of his $22,000 cash payment, and $7,500 cash for Smokeys Gray Too. The court entered judgment against Equine Equities in the total sum of $29,500 and dismissed the action as against Chudy.

Equine Equities has appealed, contending the district court erred (1) in failing to find as a matter of law that Hayes' delay of 21 months before seeking rescission constituted a waiver and barred his right of rescission, (2) in failing to discredit Hayes' testimony, (3) in finding that representations as to cost or value or that there was an interested buyer afforded the basis for rescission, and (4) in awarding Hayes the sum of $7,500, representing Hayes' equity in Smokeys Gray Too.

An action for rescission is equitable in nature and is reviewable by this court de novo on the record. *Haumont v. Security State Bank*, 220 Neb. 809, 374 N.W.2d 2 (1985).

The record shows that defendant Chudy is mainly in the business of designing and building commercial and industrial buildings for sale. He became involved in horses in 1984 when

he acquired the quarter horse stallion named "Smokeys Gray Too" on a debt. Chudy had to find a place to board the horse and was referred to Gary Clow.

In 1985, Chudy acquired a 50-percent interest in the appellant, Equine Equities, a quarter horse breeding business operated by Clow near Elkhorn, Nebraska. According to Chudy, Clow suggested that they form the corporation, with Chudy contributing the stallion and Clow contributing some broodmares as capital.

The plaintiff, Hayes, first met Chudy in 1985 when he purchased an office condominium from Chudy. During their discussions, Hayes expressed an interest in showing horses, and Chudy referred Hayes to Clow. Chudy also introduced Hayes to a former employee, Kathy Jondle. On January 28, 1986, Hayes and Jondle formed H - J Partnership for the purpose of acquiring, owning, and maintaining Smokeys Gray Too. The partnership purchased Smokeys Gray Too from Equine Equities for $25,000, with a cash downpayment of $12,500 and the balance carried on a note. Hayes provided $7,500 and Jondle paid $5,000 of the downpayment.

Early in 1986, Clow negotiated the purchase by Equine Equities of Chocolate Marquis, a registered quarter horse gelding, from the Wachter Ranch in Bismarck, North Dakota. The corporation paid $1,300 for Chocolate Marquis, and Clow told Chudy he purchased Chocolate Marquis for that amount. Clow testified that he did not believe Chocolate Marquis was a good racing prospect and that the value of Chocolate Marquis when purchased by Equine Equities was "a matter of extreme speculation." According to Clow, he and Chudy planned to train Chocolate Marquis as a show horse and then sell him for a profit of about $5,000. Chudy, on the other hand, testified that he and Clow intended to sell Chocolate Marquis for as much as $52,000.

Hayes testified that he first heard about Chocolate Marquis in the first week or two of March 1986. According to Hayes, Chudy told him that Equine Equities purchased Chocolate Marquis and some equipment for $50,000 from a ranch in South Dakota, that he and Chudy could buy Chocolate Marquis from Equine Equities for $50,000, and that Chudy had

a buyer ready to purchase Chocolate Marquis for $75,000. To finance the deal, Hayes was to trade his interest in Smokeys Gray Too and pay $22,000 in cash toward the purchase of Chocolate Marquis. Chudy was going to contribute $22,000 toward the purchase of Chocolate Marquis. Hayes testified that he thought he was buying the horse together with Chudy, that he and Chudy would sell it to Chudy's buyer 2 weeks later for $75,000, and that he and Chudy would split the profits, with Hayes getting 60 percent and Chudy 40 percent of the profits after their investment.

In reality, there was no such purchaser. Hayes testified that he asked Chudy about selling Chocolate Marquis "[c]onstantly for the two weeks so [he] could get [his] money back." According to Hayes, no one came to look at the horse except a former associate of Chudy's, a Mr. Leece from Grand Island. Hayes claims that Leece did not offer to buy Chocolate Marquis. Leece, however, testified that in early April 1986 he offered to pay $35,000 for Chocolate Marquis.

Chocolate Marquis foundered in June or July of 1986 and began limping. Foundering is a condition from which a horse may or may not recover, but the record shows that Chocolate Marquis was not showable after July 1986. A second person offered to buy Chocolate Marquis, for $2,000, in the summer of 1987, after the horse had foundered. At that time, Hayes "realized that the fifty thousand dollar horse that Mr. Chudy and I had purchased was not worth fifty thousand dollars," and demanded his money back from Chudy. At the end of their conversation, Hayes was under the impression that Chudy was going to get some more potential buyers. Employees of the defendant Equine Equities continued to treat Chocolate Marquis' condition, and Hayes pursued the matter of sale with Chudy. However, there were no further inquiries, and Hayes filed this lawsuit in December 1987.

We first consider Equine Equities' contention that Hayes' delay of 21 months before seeking rescission constituted a waiver and barred his right of rescission. In general,

> the purchaser of a chattel who desires to rescind the contract of sale for fraud . . . must act promptly, and while the rule does not require immediate action on his part after

discovery of the grounds warranting rescission, it does require him to act within a reasonable time, taking all of the circumstances into consideration.

*McGuire v. Thompson*, 152 Neb. 28, 36-37, 40 N.W.2d 237, 243 (1949). See, also, *Russo v. Williams*, 160 Neb. 564, 71 N.W.2d 131 (1955). The trial court found that Hayes' delay in bringing the action was excused by "1) the continued reassurances by Chudy (not disputed)[;] 2) the later discovery of the horse's true cost to Equine; and 3) the foundering of the horse, which presented a new uncertainty, pending his possible recovery." Taking all of the circumstances into consideration, we conclude Hayes did not waive his right to rescind the contract.

Equine Equities also contends the trial court erred in failing to discredit Hayes' trial testimony because Hayes "materially changed his testimony on vital points in order to meet the necessities of the trial." See, *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 313 N.W.2d 208 (1981); *Sikyta v. Arrow Stage Lines*, 238 Neb. 289, 470 N.W.2d 724 (1991). Hayes' testimony during cross-examination was shown to be inconsistent with portions of his deposition testimony, but the deposition itself is not included in the record.

Despite the demonstrated inconsistencies, the trial judge filed a memorandum specifically stating, "I have no difficulty at all in finding positive misstatements of fact as to the cost to Equine Equities of Chocolate Marquis and the $75,000 buyer waiting in the wings . . . ." We have said that

[w]hen the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and adopted one version of the facts rather than the opposite.

*Haumont v. Security State Bank*, 220 Neb. 809, 810, 374 N.W.2d 2, 4 (1985). See, also, *Kracl v. Loseke*, 236 Neb. 290, 461 N.W.2d 67 (1990). Having reviewed the record de novo, and being unable to review Hayes' deposition in its entirety, we determine that the inconsistencies complained of are not sufficient to discredit Hayes' testimony as a matter of law.

Equine Equities next contends the district court erred in

finding that Chudy's representations as to cost or value or that there was an interested buyer afforded the basis for rescission. In general, a contract which is voidable because it was induced by fraud may be rescinded. 17A Am. Jur. 2d *Contracts* § 567 (1991); 17A C.J.S. *Contracts* § 418(1) (1963). The party seeking to rescind a contract must allege and prove (1) the material representation of fact that was made, (2) that it was false, (3) that the aggrieved party believed the representation to be true, (4) that he relied and acted upon it, and (5) that he was thereby injured. *Perry v. Rogers*, 62 Neb. 898, 87 N.W. 1063 (1901); *Russo v. Williams, supra*; *Fricke v. Hart*, 206 Neb. 590, 294 N.W.2d 737 (1980). A person is justified in relying on a representation made to him or her in all cases where the representation is a positive statement of fact and where an investigation would be required to discover the truth. *Perry v. Rogers, supra*; *Russo v. Williams, supra*; *Fricke v. Hart, supra*; *Forker Solar, Inc. v. Knoblauch*, 224 Neb. 143, 396 N.W.2d 273 (1986); *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989).

Hayes' amended petition alleges that

> [p]rior to March 14, 1986, John P. Chudy . . . represented to Plaintiff that (a) Chocolate Marquis had just been purchased by Chudy and Equine Equities,Inc. for the sum of $50,000 and (b) that if Plaintiff would purchase such horse with him . . . . Chudy had a ready, willing and able purchaser for the horse in the amount of $75,000. . . .
>
> . . . The representations were false and untrue in fact at the time they were made, and were known by [Chudy and Equine Equities] to be false. Plaintiff relied upon such statements to his detriment.

Although Chudy denied making these statements, that issue has been resolved against the appellant. In the alternative, Equine Equities contends that the statements complained of were not representations of fact, but were merely sales talk, puffing, or Chudy's opinion as to the value of Chocolate Marquis, which do not constitute a basis for fraud. In that regard, we have said:

> While actionable fraud may not be predicated upon sales talk, puffing, or the expression of a mere opinion as to value honestly made under circumstances that do not

give another the right to rely thereon, representations of positive facts pertaining to the quality of the thing sold and relied upon by the purchaser, which are calculated to mislead and deceive, if proved false, constitute actionable fraud.

(Syllabus of the court.) *Vavricka v. Mid-Continent Co.*, 143 Neb. 94, 8 N.W.2d 674 (1943). The circumstances in this case are somewhat similar to those in *Vavricka*, where agents of the defendant company falsely represented the quality of the company's stock by making positive statements concerning payment of dividends, the extent of corporate assets, corporate expenses, and the existence of a reserve which would entitle the plaintiff to sell his stock to the company at any time after 1 year at its liquidating value.

Chudy's statements were positive representations of fact upon which Hayes could rely, and the statements did not constitute sales talk or puffing in the sense which the law implies.

Finally, Equine Equities contends that the district court erred in awarding Hayes the sum of $7,500, representing Hayes' equity in Smokeys Gray Too. The record shows that Smokeys Gray Too was the property of H - J Partnership and did not belong to Hayes individually. See Neb. Rev. Stat. § 67-308(1) (Reissue 1990). Neither the partnership nor Hayes' partner, Jondle, was a party to this lawsuit, and there is no evidence that the partnership has been formally dissolved. Although the trial court's judgment would equitably tend to restore the parties to their former positions, Hayes was not entitled to receive compensation for Smokeys Gray Too absent proof that the horse belonged to him.

That part of the trial court's judgment granting rescission of the contract and awarding Hayes $22,000 is affirmed. The award of $7,500 to Hayes, representing his equity in Smokeys Gray Too, is reversed, and the cause is remanded with directions to the trial court to enter judgment in conformity with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

GRANT, J., not participating.

SHANAHAN, J., dissenting.

Although I do not necessarily disagree with the conclusion reached in this appeal, I do object to the simplistic approach taken by the majority in disposing of this appeal.

The subject action arises out of a contract for the sale of a horse and, therefore, arises out of a contract for the sale of goods, governed by the Nebraska Uniform Commercial Code-Sales, Neb. U.C.C. §§ 2-101 et seq. (Reissue 1980 & Cum. Supp. 1988). However, the majority fails to make any reference to the U.C.C. but, rather, resolves all issues on the basis of a common-law equitable action and remedy, notwithstanding the U.C.C. and apparent availability of a legal remedy under the code. A correct analysis and disposition under the appropriate standard of review depends on, and is determined by, the nature of the action and decision reviewed, that is, whether this court is reviewing an equity action and equitable remedy or whether the review relates to a law action based on the U.C.C. with its legal remedy or remedies. Consequently, as guidance in future actions, this court should have discussed applicability or inapplicability of the U.C.C. in relation to the result reached in this appeal. See, § 2-608; *Koperski v. Husker Dodge, Inc.*, 208 Neb. 29, 302 N.W.2d 655 (1981) (distinction between law and equity in reference to an action based on the U.C.C.; rescission vs. revocation of acceptance; exhaustion of statutory legal remedy before invocation of equity); 1 J. White & R. Summers, Uniform Commercial Code § 8-1 (3d ed. 1988).

The fact that the majority ignored the U.C.C. does not negate existence of the U.C.C. and a remedy in a law action under the code.