TODD BROTHERS, A CO-PARTNERSHIP, APPELLANT, V. FEDERAL CROP INSURANCE CORPORATION, APPELLEE.

132 N. W. 2d 778

Filed January 22, 1965. No. 35776.

Ginsburg, Rosenberg, Ginsburg & Krivosha, for appellant.

John W. Douglas, Theodore L. Richling, Morton Hollander, David L. Rose, Duane L. Nelson, and William A. Geoghegan, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, and BROWER, JJ., and POLLOCK and SIDNER, District Judges.

POLLOCK, District Judge.

This is an action to recover upon a corn crop insurance policy for drought damage claimed in excess of indemnity paid. The question is how to determine the amount of the loss.

The plaintiff Todd Brothers, a co-partnership consisting of Richard Todd and his brother Raymond Todd, seeks recovery based upon determination of the loss by the method provided in the policy. The defendant Federal Crop Insurance Corporation claims that the parties modified the insurance contract by entering into a "Soil Bank Agreement" wherein they agreed upon a different method of determining crop loss. The defendant claims it paid all indemnity due plaintiff. The parties waived a jury and the action was tried to the court. Plaintiff appeals from a judgment for the defendant.

The defendant, an agency of the United States Department of Agriculture, insured plaintiff's 1954 corn crop against loss due to drought and other unavoidable causes. The contract was "continuous," and provided that it should be in effect for each succeeding year until terminated by one of the parties. It provided that the insurer could release insured acreage to enable it to be put to other use. The amount of the coverage per acre was "progressive," depended upon whether the acreage was released, and, like the fixed price per bushel for

evaluating production, was to be "shown on the county actuarial table on file in the county office."

In 1956 the plaintiff insured 250 acres of corn crop and paid a premium of $800. It has been determined that plaintiff's coverage was $25.20 per acre on 137 acres of corn, and $28 per acre on 118.8 acres of corn, and that the total coverage was $6,778.80. The planted acreage exceeded the insured acreage, and the amount of the loss is reduced proportionately.

The Federal Soil Bank Act, a part of the Agricultural Act of 1956, became effective May 28, 1956. It recites that it was designed to assist farmers to divert a portion of their cropland from the production of excessive supplies of agricultural commodities. It authorizes the Secretary of Agriculture to enter into agreements with producers whereby they are compensated for taking out of production acreage previously devoted to producing corn or other commodities. 7 U. S. C. A., §§ 1821, 1831, pp. 443, 448.

The defendant adopted a policy of releasing insured acreage upon request, irrespective of crop damage, provided the insured agreed to an adjuster's appraisal of potential production. By a memorandum dated July 3, 1956, the defendant announced that the volume of such requests was burdensome to process because of unfavorable crop conditions in some areas, and it authorized release of insured acreage without actual inspection, provided the insured signed a preliminary inspection report on form 63 containing the following: "It is understood and agreed that the appraised potential production per acre for the acreage released for compliance with the Soil Bank * * * shall be the average production per acre (actual and appraised as provided in the contract) for the acreage on the unit not placed in the Soil Bank."

This is what the parties call the "Soil Bank Agreement." The defendant's district supervisor testified that the agreement was printed on form 63 by a print-

ing company, that a pad of four forms was run through the press at a time, and that the forms so printed came into common use around July 20, 1956.

Defendant's form 63 is entitled "Inspection Report and Claim." The words "Preliminary" and "Final" near the top of the form are each followed by a printed square to permit an indication of whether the form is being used as a preliminary or a final report. If the form is executed before the amount of the loss can be finally determined, it is preliminary, and does not constitute a claim for indemnity. If the report is executed after the amount of the loss is determined, it is a final one, and is a claim for indemnity.

On July 27, 1956, plaintiff complained to defendant that a drought was seriously damaging its corn crop, and it requested release of part of the acreage for inclusion in the Soil Bank program. An adjuster visited the farm on the same day, and prepared an inspection report and claim on form 63. Richard Todd executed it on behalf of the partnership.

The square after "Preliminary" is crossed, indicating that the parties intended it to be a preliminary report. The square after "Final" is blank, indicating that the parties did not intend it to be a final report or a claim for determinable indemnity. All spaces are blank in column F entitled, "Appraised Production per Acre," indicating that there was no attempt to make a final determination of actual production. The form was executed in a manner indicating that 150 acres of corn in fields "A," "B," "C," and "D" were released to be placed in the Soil Bank, that 8 acres were left in the middle of each of the four fields for "Harvest and Appraisal," and that 92 acres were released for "Feed," to be cut for ensilage.

Plaintiff notified defendant when harvest of the corn was complete. An adjuster visited the farm on November 24, 1956. The parties agree that 137 acres of corn released to the Soil Bank produced an average of 1.9

bushels per acre, and that the acreage not placed in the Soil Bank produced an average of 15.2 bushels per acre.

The defendant paid plaintiff indemnity of $1,104.60, which the parties agree is full payment if the amount of the loss is to be determined by the method provided in the Soil Bank agreement. They agree that plaintiff should be paid an additional sum of $2,759.14 if the damage to the released acreage should be determined by the method provided in the policy.

The statement of the facts contained in plaintiff's brief refers to the preliminary inspection report signed by Richard Todd on July 27, 1956. It says, "When the preliminary report, Exhibit 6, was executed the provision referred to as 'Soil Bank Agreement' was not on the instrument," and it cites testimony of Richard Todd. However, on cross-examination he admitted that this exhibit containing the Soil Bank agreement had been in his possession since he signed it, and "perhaps" it would have had to be there at the time. It is obvious that the agreement was on the instrument when he signed it.

The plaintiff asserts that it is not bound by the provisions of the Soil Bank agreement because its effect was not discussed with the partner who signed it, was never brought to his attention, and he "did not even know of its presence."

In the absence of fraud, one who signs an instrument without reading it, when he can read and has the opportunity, cannot avoid the effect of his signature merely because he was not informed of its contents. J. I. Case Co. v. Hrubesky, 125 Neb. 588, 251 N. W. 169. To permit a party to admit that he signed an instrument but did not read it or know its provisions, would absolutely destroy the value of contracts. Hoshaw v. Cosgriff, 247 F. 22. It would be a dangerous innovation of contract law to hold that one is not bound by what he signs, and that that which he fails to read or understand should be read out of contracts. Adolf v. Union Nat. Life Ins. Co., 170 Neb. 38, 101 N. W. 2d 504.

Plaintiff claims that there was no new consideration for the Soil Bank agreement, and that it was invalid because the defendant failed to give timely notice thereof in compliance with sections 9 and 11 of the policy, providing as follows: "9. Life of contract, cancellation or termination thereof. * * * Cancellation may be made by either party giving written notice to the other party on or before the cancellation date which shall be the March 31 preceding the planting of the crop * * *. * * * 11. Changes in contract. The Corporation reserves the right to change the premium rate(s), insurance coverage(s) and other terms and provisions of the contract from year to year. Notice of such changes shall be mailed to the insured at least 15 days prior to the cancellation date. Failure of the insured to cancel the contract as provided in section 9 shall constitute his acceptance of any such changes. If no notice is mailed to the insured, the terms and provisions of the contract for the prior year shall continue in force."

These provisions did not restrict the right of the parties to modify the contract by mutual assent, and without giving the notice required when one-party changes were made by the insured.

There was consideration for the Soil Bank agreement, although new consideration was not required. The original contract was executory since neither of the parties had fully performed its provisions. The terms of a written executory contract may be modified by the parties thereto in any manner they choose. 17A C. J. S., Contracts, § 377, p. 433. Such a contract may even be modified by a subsequent oral agreement of the parties, and with no new consideration. Swanson v. Madsen, 145 Neb. 815, 18 N. W. 2d 217; Personal Finance Co. v. Hynes, 130 Neb. 547, 265 N. W. 541. An executory written contract may be modified by the parties at any time after its execution and before a breach has occurred, without any new consideration. O. K. Door Co., Inc. v. Lincoln Eng. Constr. Co., 174 Neb. 682, 119 N. W.

2d 153; Moore v. Markel, 112 Neb. 743, 201 N. W. 147.

The plaintiff contends that the Soil Bank agreement does not govern the method of determining the crop loss because the "inspector went out and personally looked over the acreage and made an estimate of the appraised production." The evidence does not support this statement.

The defendant's district supervisor testified that the Soil Bank agreement was used in the absence of a complete inspection and appraisal, and that where an appraisal was made, it was required to be reported in column F of form 63. The form signed by Mr. Todd was a preliminary report and it did not record any appraisal. Mr. Todd did not testify that an appraisal was made.

The original contract of insurance specified that the determination of loss should be made on the basis of actual production. Then defendant permitted release of insured acreage to the Soil Bank if the insured agreed to an appraisal. This method was relaxed to waive actual inspection provided the insured agreed to a determination of loss by the method provided in the Soil Bank agreement.

It could not be urged that the adjustor agreed to any other method of determining loss since no other agreement was authorized or would be binding upon the defendant. The government is not bound by unauthorized acts of its agents. It was said in Federal Crop Ins. Corp. v. Merrill, 332 U. S. 380, 68 S. Ct. 1, 92 L. Ed. 10, 175 A. L. R. 1075: "* * * anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. * * * even though, as here, the agent himself may have been unaware of the limitations upon his authority."

We conclude that the contract of insurance was modified in the manner claimed by the defendant, and that the defendant has paid plaintiff all indemnity due under

the contract as modified. The decision of the trial court was correct and should be affirmed.

AFFIRMED.