Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/12/2018 08:10 AM CDT

THOMAS CULLINANE, AS SPECIAL ADMINISTRATOR FOR THE
ESTATE OF HELEN CULLINANE, DECEASED, APPELLEE, V.
BEVERLY ENTERPRISES - NEBRASKA, INC., DOING BUSINESS
AS GOLDEN LIVINGCENTER - VALHAVEN, APPELLANT, AND
THOMAS LARSON, JR., DPM, ET AL., APPELLEES.

___ N.W.2d ___

Filed June 15, 2018.    No. S-17-486.

1. **Arbitration and Award.** Arbitrability presents a question of law.
2. ____. Whether a stay of proceedings should be granted and arbitration required is a question of law.
3. **Judgments: Jurisdiction.** A jurisdictional issue that does not involve a factual dispute presents a question of law.
4. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.
5. **Arbitration and Award: Appeal and Error.** The standard of review as to the issue of arbitrability summarily tried to the court is the same as in a bench trial of a law action.
6. **Judgments: Appeal and Error.** In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong.
7. ____: ____. In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.
8. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, and this is so even where neither party has raised the issue.
9. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered

by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders.

10. **Federal Acts: Arbitration and Award: Final Orders: Appeal and Error.** In order to determine whether state law governs the finality for purposes of appeal of an order denying a motion to compel arbitration under the Federal Arbitration Act, courts must first apply state procedural rules to determine whether the order is final for purposes of appeal and then determine whether the result of that inquiry would undermine the goals and policies of the act.

11. \_\_\_\_: \_\_\_\_: \_\_\_\_: \_\_\_\_. A direct appeal from an order denying a motion to compel arbitration furthers the objectives of the Federal Arbitration Act by permitting final resolution of the issue of arbitrability without having to first conclude a judicial proceeding on the merits, at which point the arbitral remedy would be rendered essentially meaningless.

12. **Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), the three types of final orders which may be reviewed on appeal are (1) an order which affects a substantial right and which determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after judgment is rendered.

13. **Arbitration and Award: Final Orders.** The denial of a motion to compel arbitration is a final, appealable order because it affects a substantial right and is made in a special proceeding.

14. **Arbitration and Award.** Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he or she has not agreed so to admit.

15. **Federal Acts: Arbitration and Award: Contracts.** If arbitration arises from a contract involving interstate commerce, it is governed by the Federal Arbitration Act.

16. **Constitutional Law: Waiver: Intent.** A party has a constitutional right to adjudication of a justiciable dispute, and the law will not find a waiver of that right absent direct and explicit evidence of actual intent of a party's agreement to do so.

17. **Arbitration and Award.** Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.

18. **Arbitration and Award: Contracts.** Disputes about arbitrability for a court to decide include threshold questions such as whether the parties are bound by a given arbitration clause or whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.

19. **Arbitration and Award: Intent.** Parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy, if they do so with clear and unmistakable intent.

20. **Arbitration and Award.** A valid delegation clause requires the court to refer a claim to arbitration to the arbitrator to decide gateway arbitrability issues.

21. **Arbitration and Award: Contracts.** Enforcement of an arbitration agreement involves two analytical steps: The first is contract formation—whether the parties entered into any arbitration agreement at all. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement.

22. **Federal Acts: Arbitration and Award: Words and Phrases.** A delegation clause is an agreement to arbitrate a threshold issue and is simply an additional, severable, antecedent arbitration agreement the party seeking arbitration asks the court to enforce, and the Federal Arbitration Act operates on this additional arbitration agreement just as it does on any other.

23. **Federal Acts: Arbitration and Award: Contracts.** Arbitration in Nebraska is governed by the Uniform Arbitration Act as enacted in Nebraska, but if arbitration arises from a contract involving interstate commerce, it is governed by the Federal Arbitration Act.

24. **Federal Acts: Arbitration and Award.** Where a transaction falls within the scope of the Federal Arbitration Act, the substantive issue of whether the motion to compel arbitration should be granted is a question of federal law.

25. ____: ____. Under 9 U.S.C. § 4 (2012) of the Federal Arbitration Act, the court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof, if no jury trial be demanded by the party alleged to be in default.

26. **Arbitration and Award.** Under Neb. Rev. Stat. § 25-2603(a) (Reissue 2016), on application of a party showing a valid arbitration agreement and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order for the moving party; otherwise, the application shall be denied.

27. **Federal Acts: Arbitration and Award.** Neb. Rev. Stat. § 25-2603 (Reissue 2016) does not defeat the Federal Arbitration Act's objective, expressed in 9 U.S.C. § 4 (2012), that if the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereon.

28. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not passed upon by the trial court.

29. **Federal Acts: Arbitration and Award: Contracts.** The Federal Arbitration Act makes arbitration agreements valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

30. **Contracts: Fraud.** In the absence of fraud, one who signs an instrument without reading it, when one can read and has had the opportunity to do so, cannot avoid the effect of one's signature merely because one was not informed of the contents of the instrument.

31. ____: ____. The doctrine that the carelessness or negligence of a party in signing a writing estops him or her from afterward disputing the contents of such writing is not applicable in a suit thereon between the original parties thereto when the defense is that such writing, by reason of fraud, does not embrace the contract actually made.

32. ____: ____. Fraud in the execution goes to the very existence of the contract, such as where a contract is misread to a party or where one paper is surreptitiously substituted for another, or where the party is tricked into signing an instrument he or she did not mean to execute.

33. ____: ____. Fraud in the inducement goes to the means used to induce a party to enter into a contract; in such cases, the party knows the character of the instrument and intends to execute it, but the contract may be voidable if the party's consent was obtained by false representations.

34. **Fraud: Proof.** A fraudulent misrepresentation claim requires a plaintiff to establish the following elements: (1) A representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) the representation was made with the intention that the plaintiff should rely on it; (5) the plaintiff did so rely on it; and (6) the plaintiff suffered damage as a result.

35. **Fraud.** Fraudulent misrepresentations may consist of half-truths calculated to deceive, and a representation literally true is fraudulent if used to create an impression substantially false.

36. ____. Whether a party's reliance upon a misrepresentation was reasonable is a question of fact.

37. ____. A party is justified in relying upon a representation made to the party as a positive statement of fact when an investigation would be required to ascertain its falsity.

38. **Fraud: Proof: Circumstantial Evidence.** In fraud case, direct evidence is not essential, but proof of fraud drawn from circumstantial evidence must not be guesswork or conjecture; such proof must be rational and logical deductions from facts and circumstances from which they are inferred.

39. **Trial.** Under Neb. Rev. Stat. § 25-1127 (Reissue 2016), in the absence of a request by a party for specific findings, a trial court is not required to make detailed findings of fact and need only make its findings generally for the prevailing party.

40. **Trial: Judgments: Evidence: Appeal and Error.** Where trial is to the court and no request for specific findings is made, if there is a conflict in the evidence, an appellate court, in reviewing the judgment rendered, will presume that controverted facts were decided by the trial court in favor of the successful party and the findings will not be disturbed unless clearly wrong.

41. **Affidavits.** An affidavit is admissible in certain enumerated situations, including motion practice, which includes the use of affidavits relating to preliminary, collateral, and interlocutory matters.

42. **Judgments: Evidence: Appeal and Error.** Even though an appellate court is, in the absence of oral testimony, equally capable as the trial court of examining the evidence and drawing conclusions therefrom and is under a duty to do so, and even though a case was submitted to the trial court without oral evidence, the duty of the appellate court to evaluate the facts does not extend to the right or duty to make an independent evaluation thereof without regard to the findings below. In such a case, an appellate court is loath to overturn the findings of an experienced trial judge unless in the opinion of the court they are clearly wrong.

43. **Affidavits.** Statements in affidavits as to opinion, belief, or conclusions of law are of no effect.

Appeal from the District Court for Douglas County: Gregory M. Schatz, Judge. Affirmed.

Jeanelle R. Lust and Charles E. Wilbrand, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellant.

Shayla M. Reed, of Reed Law Offices, P.C., L.L.O., for appellee Thomas Cullinane.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke, JJ.

Funke, J.

Beverly Enterprises - Nebraska, Inc., doing business as Golden LivingCenter - Valhaven (GLCV), appeals the denial of its motion to dismiss or stay proceedings and compel arbitration. GLCV moved to enforce an agreement to arbitrate against Thomas Cullinane, as special administrator for the estate of his mother, Helen Cullinane; Thomas had filed a wrongful death action against GLCV. Thomas objected to GLCV's motion, and the court ruled in his favor, finding the execution of the "Alternative Dispute Resolution Agreement" (the ADR Agreement) was not binding upon Helen or her estate. GLCV appealed, and for the reasons set forth below, we affirm.

## I. BACKGROUND

Helen was a resident of GLCV, a skilled nursing facility located in Valley, Nebraska. She was 88 years old at the time of her admission in 2010 and suffered from dementia. She passed away on February 2, 2015. Thomas became the special administrator of Helen's estate and filed a wrongful death action against GLCV on behalf of the estate.

GLCV filed a motion to dismiss or, in the alternative, stay proceedings and compel arbitration pursuant to § 4 of the Federal Arbitration Act (FAA),[1] in accordance with the terms of a written arbitration agreement between GLCV and Helen. GLCV asserted that Eugene Cullinane, Helen's husband, age 84, while acting as Helen's attorney in fact, agreed to resolve disputes through arbitration when he signed the ADR Agreement on September 28, 2010, the date Eugene and Helen were admitted to the facility.

The front page of the ADR Agreement contains a title written in bold and capitalized letters and large font which states: "Alternative Dispute Resolution Agreement." The following language, in bold and capitalized letters, appears

---

[1] 9 U.S.C. §§ 1 to 16 (2012).

below the title: "This agreement is <u>not</u> a condition of admission to or continued residence in the facility." The ADR Agreement states:

> The Parties agree that any disputes covered by this Agreement ("Covered Disputes") that may arise between them shall be resolved exclusively by an ADR process that shall include mediation and, where mediation is not successful, binding arbitration. The parties to this Agreement acknowledge and agree that upon execution by Resident, this Agreement becomes part of the Admission Agreement, and that the Admission Agreement evidences a transaction in interstate commerce governed by the [FAA].

The ADR Agreement further includes the following language, in bold and capitalized letters:

> The parties understand, acknowledge, and agree that they are selecting a method of resolving disputes without resorting to lawsuits or the courts, and that by entering into this agreement, they are giving up their constitutional right to have their disputes decided in a court of law by a judge or jury . . . .

The ADR Agreement provides: "Covered Disputes, including the determination of the scope or applicability of this Agreement, shall be determined by arbitration . . . ." A section in the agreement titled "Resident's Understanding" states: "The Resident understands that . . . his or her signing of this Agreement is not a condition of admission to or residence in the Facility . . . ." The signature page of the document states in bold and capitalized letters and in large font: "This agreement governs important legal rights. Please read it carefully and in its entirety before signing."

At the hearing on GLCV's motion to compel arbitration, GLCV offered the affidavit of Trisha Weberg, the business manager of GLCV. The affidavit included a copy of the durable power of attorney signed by Helen on July 23, 2008, which appointed Eugene as her attorney in fact. Weberg, who

was not present when the ADR Agreement was executed, stated her personal knowledge concerning the facility's routine procedure with respect to its resident admissions. Weberg stated that when she assisted in the admission process, she would do the following: present the ADR Agreement to the resident and allow the resident and the resident's family members to read the paperwork; explain that by signing the ADR Agreement, the resident would waive his or her right to a trial and agree to submit any dispute to arbitration, but state that signing the ADR Agreement was not required to become a resident at the facility; obtain the resident's signature; and sign the document on behalf of GLCV. Weberg stated it is her belief that the normal procedure was followed with regard to Helen's admission. GLCV did not present an affidavit from its employee who executed the ADR Agreement on its behalf.

Thomas offered affidavits from himself and Eugene. According to Eugene's affidavit, he and Helen sought admission to GLCV when Helen was transferred from the hospital on September 28, 2010. Helen was taken to a room, and a GLCV staff member led Eugene and Thomas into a small office. Eugene stated, "[W]e sat down and the female staff member presented me with a stack of papers which she said was 'the paperwork I needed to sign to admit my wife' and another stack to admit myself." He stated, "The staff member handled the papers, turned the pages and told me she needed my signature 'here' and directed me where to sign." Eugene conceded that he signed the ADR Agreement, but stated that he did so because it was his understanding that if he did not sign the paperwork, Helen would not have been admitted to receive health care. He stated he was not informed that any document in the stack of papers was optional, that the paperwork included an arbitration agreement, or that he was waiving his or his wife's right to a jury trial. Eugene stated he would have not signed the ADR Agreement had he known what it meant and that it was not required.

Thomas stated in his affidavit that when he and Eugene met with the staff member in the office, she specifically stated that "'these are standard forms we need you to sign.'" Thomas stated she turned the stack of papers to face Eugene, flipped up the bottom half of the pages, and pointed to the place where she wanted him to sign. He stated that he was present during the entire meeting and that at no time did the staff member state any of the documents were optional or would have the effect of waiving legal rights.

Based on the evidence, the district court entered an order which found that "Eugene['s] execution of the arbitration agreement cannot be binding upon Helen . . . , nor her estate, and that [GLCV's] motion should be dismissed, and [GLCV] given two weeks to further plead to [Thomas'] Complaint."

## II. ASSIGNMENTS OF ERROR

GLCV assigns, summarized, that the district court erred in (1) dismissing GLCV's motion to dismiss or stay proceedings and compel arbitration, (2) failing to compel Thomas to arbitration, (3) determining that Eugene's execution of the ADR Agreement was not binding upon Helen or her estate, (4) implicitly ruling that Eugene's signature was obtained by fraud, and (5) failing to support its decision with any legal analysis.

## III. STANDARD OF REVIEW

[1-4] Arbitrability presents a question of law.[2] Whether a stay of proceedings should be granted and arbitration required is also a question of law.[3] Likewise, a jurisdictional issue that does not involve a factual dispute presents a question of law.[4] When reviewing questions of law, an appellate court

---

[2] *Citizens of Humanity v. Applied Underwriters*, 299 Neb. 545, 909 N.W.2d 614 (2018).

[3] *Good Samaritan Coffee Co. v. LaRue Distributing*, 275 Neb. 674, 748 N.W.2d 367 (2008).

[4] *State v. Irish*, 298 Neb. 61, 902 N.W.2d 669 (2017).

resolves the questions independently of the lower court's conclusions.[5]

[5] We have not yet had the opportunity to determine a standard of review when the issue of arbitrability is summarily tried to the court. However, we see no reason why the standard of review would be different from the standard of review in a bench trial of a law action.

[6,7] In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong.[6] In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence.[7]

## IV. ANALYSIS

### 1. Jurisdiction

[8,9] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[8] This is so even where, as here, neither party has raised the issue.[9] For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to

---

[5] *Frohberg Elec. Co. v. Grossenburg Implement*, 297 Neb. 356, 900 N.W.2d 32 (2017).

[6] See *Wynne v. Menard, Inc.*, 299 Neb. 710, 910 N.W.2d 96 (2018). See, also, *Webb v. American Employers Group*, 268 Neb. 473, 684 N.W.2d 33 (2004).

[7] *Eicher v. Mid America Fin. Invest. Corp.*, 275 Neb. 462, 748 N.W.2d 1 (2008).

[8] *Boyd v. Cook*, 298 Neb. 819, 906 N.W.2d 31 (2018).

[9] *Karo v. NAU Country Ins. Co.*, 297 Neb. 798, 901 N.W.2d 689 (2017).

entertain appeals from nonfinal orders.[10] In this case, we must decide whether the order denying GLCV's motion to compel arbitration was a final, appealable order.

Nebraska has adopted the Uniform Arbitration Act (UAA), which is codified in Neb. Rev. Stat. §§ 25-2601 to 25-2622 (Reissue 2016). Section 25-2603(a) of the UAA authorizes a party to a judicial proceeding to apply for an order compelling arbitration of the dispute. The UAA further provides that an appeal may be taken from an order denying such an application, pursuant to § 25-2620(a)(1).[11]

But GLCV did not invoke the UAA in its motion to compel arbitration. Instead, GLCV filed its motion to compel arbitration pursuant to the FAA. Thus, the provision of the UAA permitting an appeal from an order denying an application to compel arbitration is inapplicable to this case.

Section 4 of the FAA authorizes a U.S. district court to entertain a petition to compel arbitration if the court would have jurisdiction, save for the arbitration agreement, over a suit arising out of the controversy between the parties,[12] while § 16 of the FAA governs appeals and provides in part that "[a]n appeal may be taken from . . . (1) an order . . . (B) denying a petition under section 4 of this title to order arbitration to proceed."[13] The FAA, however, does not indicate whether its provisions relating to appeals are applicable in state court actions, such as the instant matter, where a party seeks to enforce an arbitration clause under the FAA.

[10,11] In *Webb v. American Employers Group*,[14] we concluded that in order to determine whether state law governs the finality for purposes of appeal of an order denying a motion

---

[10] *Gillpatrick v. Sabatka-Rine*, 297 Neb. 880, 902 N.W.2d 115 (2017).

[11] *Pearce v. Mutual of Omaha Ins. Co.*, 293 Neb. 277, 876 N.W.2d 899 (2016).

[12] 9 U.S.C. § 4.

[13] 9 U.S.C. § 16.

[14] *Webb, supra* note 6.

to compel arbitration under the FAA, we must first apply our state procedural rules to determine whether the order is final for purposes of appeal and then determine whether the result of that inquiry would undermine the goals and policies of the FAA. We determined that State procedural rules, which do not defeat the FAA's objectives, govern the determination of whether an order denying a motion to compel arbitration is final for purposes of appeal.[15] We found that a direct appeal from an order denying a motion to compel arbitration furthered the objectives of the FAA by permitting final resolution of the issue of arbitrability without having to first conclude a judicial proceeding on the merits, at which point the arbitral remedy would be rendered essentially meaningless.[16]

[12,13] Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), the three types of final orders which may be reviewed on appeal are (1) an order affecting a substantial right in an action that, in effect, determines the action and prevents a judgment; (2) an order affecting a substantial right made during a special proceeding; and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered.[17] Ultimately, in *Webb*, we held that the denial of a motion to compel arbitration under the FAA is a final, appealable order under the second of these categories, because it affects a substantial right and is made during a special proceeding.[18]

In the instant matter, the order denying GLCV's motion to compel arbitration was made pursuant to a special proceeding. The order affected GLCV's substantial rights, namely its legal, contractual right to the benefits of arbitration, which

---

[15] See *id*. See, also, *Speece v. Allied Professionals Ins. Co.*, 289 Neb. 75, 853 N.W.2d 169 (2014); *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d 538 (2010).

[16] *Webb, supra* note 6.

[17] *In re Interest of Dana H.*, 299 Neb. 197, 907 N.W.2d 730 (2018).

[18] *Webb, supra* note 6.

right was available to GLCV prior to the court's order. The district court's order is therefore a final, appealable order.

## 2. ADR Agreement

[14] The U.S. Supreme Court has held that arbitration "'is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"[19] Thus, we must determine whether the district court clearly erred when it determined that the ADR Agreement was not binding upon Helen or her estate. In order to make that determination, we must consider whether the ADR Agreement comes within the scope of the FAA, whether the trial court had the authority to decide the enforceability of the ADR Agreement, and whether the trial court used the correct procedure to decide the arbitrability of the agreement.

### (a) ADR Agreement Within Scope of FAA

[15] It is well settled that if arbitration arises from a contract involving interstate commerce, it is governed by the FAA.[20] "Commerce" as defined by the FAA includes "commerce among the several States."[21] The U.S. Supreme Court has held that the phrase "'"involving commerce"'" requires a broad interpretation in order to give effect to the FAA's basic purpose, which is to put arbitration provisions on the same footing as a contract's other terms.[22]

---

[19] *AT&T Technologies v. Communications Workers*, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). See, also, *Zweiback Family L.P. v. Lincoln Benefit Life Co.*, 299 Neb. 180, 907 N.W.2d 700 (2018), and *Kelley v. Benchmark Homes, Inc.*, 250 Neb. 367, 550 N.W.2d 640 (1996), *disapproved on other grounds, Webb, supra* note 6.

[20] *Karo, supra* note 9; *Aramark Uniform & Career Apparel v. Hunan, Inc.*, 276 Neb. 700, 757 N.W.2d 205 (2008).

[21] 9 U.S.C § 1.

[22] *Webb, supra* note 6, 268 Neb. at 478, 684 N.W.2d at 39 (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995)).

In the instant matter, GLCV brought the motion to compel under § 4 of the FAA. In addition, Thomas' complaint alleges that Helen was a resident of Nebraska and that Beverly Enterprises - Nebraska, Inc., doing business as GLCV, was a California corporation; the ADR Agreement specifically states that the admission agreement evidences a transaction involving interstate commerce; and neither party contends that the FAA is not the applicable statutory authority. As a result, we conclude that this case involves a transaction within the scope of the FAA.

(b) Court Decides Enforceability
of ADR Agreement

[16-18] A party has a constitutional right to adjudication of a justiciable dispute, and the law will not find a waiver of that right absent direct and explicit evidence of actual intent of a party's agreement to do so.[23] "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."[24] This rule creates a rebuttable presumption that the issue of arbitrability—whether the parties have agreed to subject a dispute to arbitration—is an issue for judicial determination.[25] Disputes about arbitrability for a court to decide include threshold questions such as whether the parties are bound by a given arbitration clause or whether an arbitration clause in a concededly binding contract applies to a particular

---

[23] *Smith Barney, Inc. v. Painters Local Union No. 109*, 254 Neb. 758, 579 N.W.2d 518 (1998); *Tracy Broadcasting Corp. v. Telemetrix, Inc.*, 17 Neb. App. 112, 756 N.W.2d 742 (2008).

[24] *AT&T Technologies*, *supra* note 19, 475 U.S. at 649.

[25] *Id*. See, *BG Group PLC v. Republic of Argentina*, ___ U.S. ___, 134 S. Ct. 1198, 188 L. Ed. 2d 220 (2014); *Oxford Health Plans LLC v. Sutter*, ___ U.S. ___, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995).

type of controversy.[26] Disputes over "formation of the parties' arbitration agreement" and "its enforceability or applicability to the dispute" at issue are "matters . . . 'the court' must resolve."[27]

[19,20] Conversely, parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy, if they do so with "clear and unmistakable" intent.[28] A contractual provision that delegates to the arbitrator all questions regarding the scope or enforceability of an arbitration provision is referred to as a "delegation clause."[29] A valid delegation clause requires the court to refer a claim to arbitration to the arbitrator to decide gateway arbitrability issues.[30]

[21,22] Enforcement of an arbitration agreement involves two analytical steps: The first is contract formation—whether the parties entered into any arbitration agreement at all. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement.[31] Thus, if the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step—an analysis of whether there is an agreement to arbitrate any set of claims—as it always does.[32] But the only question, after finding that there is in fact a valid agreement, is whether the purported delegation clause is in fact a delegation clause— that is, if it evinces an intent to have the arbitrator decide

---

[26] *BG Group PLC, supra* note 25.

[27] *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 299-300, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010).

[28] *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 n.1, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010).

[29] See, *id.*; *Citizens of Humanity, supra* note 2.

[30] See *id.*

[31] *Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199 (5th Cir. 2016).

[32] *Id.*

whether a given claim must be arbitrated.[33] A delegation clause is an agreement to arbitrate a threshold issue and is simply an additional, severable, antecedent arbitration agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.[34]

In the instant matter, we note the plain language of the ADR Agreement does not clearly and unmistakably empower an arbitrator to determine enforceability issues such as the challenge Thomas raises here. In addition, GLCV did not argue to the trial court, nor does it argue to this court, that the parties agreed to allow an arbitrator to decide issues of arbitrability. Further, Thomas specifically challenged the validity of the agreement to arbitrate based upon fraud. Accordingly, if the claim is fraud in the inducement or fraud in the execution of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the court may proceed to adjudicate it.[35]

Thus, Thomas' enforceability challenge to the ADR Agreement is a matter for judicial determination.

### (c) Motion to Compel
### Arbitration Proceedings

The parties put forth different understandings about the procedure the trial court followed when it ruled on GLCV's motion to compel arbitration. Thomas claims the court denied arbitration using a motion for summary judgment standard of viewing the evidence in the light most favorable to the

---

[33] *Id.*

[34] *Citizens of Humanity, supra* note 2.

[35] *Prima Paint v. Flood & Conklin*, 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967). See, also, *Burden v. Check Into Cash of Kentucky, LLC*, 267 F.3d 483 (6th Cir. 2001); *Ferro Corp. v. Garrison Industries, Inc.*, 142 F.3d 926 (6th Cir. 1998); *R.M. Perez & Associates, Inc. v. Welch*, 960 F.2d 534 (5th Cir. 1992); *Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866 (7th Cir. 1985).

nonmoving party. Thomas further claims he is entitled to a jury trial on the issue of the formation of the ADR Agreement. To support his contentions, Thomas relies on 9 U.S.C. § 4.[36]

GLCV contends that neither of Thomas' claims is correct. First, it contends that the district court's order did not reference the motion for summary judgment standard. Second, it contends that since the court summarily denied the application to compel arbitration, the issue is fully decided and no jury trial would be warranted.

[23,24] Arbitration in Nebraska is governed by the UAA as enacted in Nebraska, but if arbitration arises from a contract involving interstate commerce, it is governed by the FAA.[37] Where a transaction falls within the scope of the FAA, the substantive issue of whether the motion to compel arbitration should be granted is a question of federal law.[38] However, the U.S. Supreme Court has never held that § 4 of the FAA, which is a procedural section, applies to state courts.[39] There is no federal policy favoring arbitration under a certain set of procedural rules, and the federal policy is simply to ensure the enforceability of private agreements to arbitrate.[40]

[25] Section 4 of the FAA authorizes an aggrieved party to seek an order directing arbitration to proceed in the manner provided for in the parties' agreement.[41] The court shall hear

---

[36] See, *BOSC, Inc. v. Bd. of Cnty. Com'rs Bernalillo Cnty*, 853 F.3d 1165 (10th Cir. 2017); *Nebraska Machinery Co. v. Cargotec Solutions, LLC*, 762 F.3d 737 (8th Cir. 2014); *Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975 (10th Cir. 2014); John M. Gradwohl, *Arbitration: Interface of the Federal Arbitration Act and Nebraska State Law*, 43 Creighton L. Rev. 97 (2009).

[37] *Aramark Uniform & Career Apparel, supra* note 20.

[38] *Webb, supra* note 6.

[39] *Vaden v. Discover Bank*, 556 U.S. 49, 129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009); *Volt Info. Sciences v. Leland Stanford Jr. U.*, 489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989); *Kremer, supra* note 15.

[40] *Kremer, supra* note 15.

[41] 9 U.S.C. § 4.

the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.[42] If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof, if no jury trial be demanded by the party alleged to be in default.[43]

[26] Under § 25-2603(a) of the UAA, on application of a party showing a valid arbitration agreement and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order for the moving party; otherwise, the application shall be denied.

[27] Section 25-2603 does not defeat the FAA's objective, expressed in § 4, that if the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereon. Further, nothing in our record indicates that Thomas requested a jury trial on the enforceability of the ADR Agreement, and as a result, the trial court summarily tried the issue of arbitrability.

[28] On appeal, Thomas did not object to the procedure followed by the district court, and he did not cross-appeal or assign error to the fact that the district court did not order a jury trial on the issue. Because an appellate court will not consider an issue on appeal that was not passed upon by the trial court,[44] we do not address Thomas' contention that he is entitled to a jury trial on the issue of enforceability.

---

[42] *Id.*

[43] *Id.*

[44] *Thorson v. Nebraska Dept. of Health & Human Servs.*, 274 Neb. 322, 740 N.W.2d 27 (2007).

(d) Enforceability of
ADR Agreement

[29] The FAA makes arbitration agreements "'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'"[45] Under § 2 of the FAA, arbitration agreements can be declared unenforceable "'upon such grounds as exist at law or in equity for the revocation of any contract,'"[46] including contract defenses like fraud or unconscionability.[47] State law governs the formation of contracts, as well as the validity, revocability, and enforceability of contracts generally.[48] The U.S. Supreme Court has declared that state contract law applies to contracts with arbitration agreements governed by the FAA.[49]

In this matter, neither party disputed that Eugene signed the ADR Agreement and that he had authority to bind Helen and her estate under the durable power of attorney. Instead, Thomas argues that the ADR Agreement was not enforceable, because it was obtained by fraud.

In overruling GLCV's motion to compel arbitration, the court did not explicitly state that Eugene signed the ADR Agreement as a consequence of a fraudulent misrepresentation made by GLCV's agent. However, a logical reading of the court's order is that it implicitly determined that the ADR Agreement is void or should be voided due to fraud.

GLCV claims that if the court denied the motion on a fraud theory advanced by Thomas, a proper fraud analysis would

---

[45] *Kindred Nursing Centers L.P. v. Clark*, ___ U.S. ___, 137 S. Ct. 1421, 1426, 197 L. Ed. 2d 806 (2017) (quoting 9 U.S.C. § 2).

[46] *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011).

[47] *Id*. See, also, *Prima Paint, supra* note 35.

[48] *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996); *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). See *Koricic v. Beverly Enters. - Neb.*, 278 Neb. 713, 773 N.W.2d 145 (2009).

[49] *Aramark Uniform & Career Apparel, supra* note 20.

have analyzed the six elements of fraud.[50] Accordingly, GLCV argues that no representation was made, any representation made was not false, any false representation made was not known to be false, and there was no fraudulent intent, nor was there any reasonable reliance. GLCV asserts there was no fraud in the execution, nor was there any fraud in the inducement.

[30] Generally, in the absence of fraud, one who signs an instrument without reading it, when one can read and has had the opportunity to do so, cannot avoid the effect of one's signature merely because one was not informed of the contents of the instrument.[51]

> "[C]ourts will not permit a party to avoid a contract into which that party has entered on the grounds that he or she did not attend to its terms, that he or she did not read the document which was signed and supposed it was different from its terms, or that it was a mere form."[52]

To permit a party to admit that he or she signed an instrument but did not read it or know its provisions would absolutely destroy the value of contracts.[53]

[31] However, the rule that one who fails to read a contract cannot avoid the effect of signing it applies only in the

---

[50] See *deNourie & Yost Homes v. Frost*, 289 Neb. 136, 854 N.W.2d 298 (2014).

[51] *In re Claims Against Pierce Elevator*, 291 Neb. 798, 868 N.W.2d 781 (2015); *Eicher v. Mid America Fin. Invest. Corp.*, 270 Neb. 370, 702 N.W.2d 792 (2005); *Ray Tucker & Sons v. GTE Directories Sales Corp.*, 253 Neb. 458, 571 N.W.2d 64 (1997); *Todd Brothers v. Federal Crop Ins. Corp.*, 178 Neb. 211, 132 N.W.2d 778 (1965); *Case Co. v. Hrubesky*, 125 Neb. 588, 251 N.W. 169 (1933).

[52] *In re Claims Against Pierce Elevator, supra* note 51, 291 Neb. at 826, 868 N.W.2d at 802 (quoting *In re Claims Against Atlanta Elev., Inc.*, 268 Neb. 598, 685 N.W.2d 477 (2004) (superseded by statute as stated in *Telrite Corp. v. Nebraska Pub. Serv. Comm.*, 288 Neb. 866, 852 N.W.2d 910 (2014)).

[53] *Todd Brothers, supra* note 51.

absence of fraud[54] or an inability to read.[55] The doctrine that the carelessness or negligence of a party in signing a writing estops him or her from afterward disputing the contents of such writing is not applicable in a suit thereon between the original parties thereto when the defense is that such writing, by reason of fraud, does not embrace the contract actually made.[56]

[32,33] A variety of different types of fraud may be at issue in a given case. We have emphasized, for example, that "fraud in the execution" and "fraud in the inducement" are distinct theories of fraud.

> Fraud in the execution goes to the very existence of the contract, such as where a [contract] is misread to the [party], or where one paper is surreptitiously substituted for another, or where a party is tricked into signing an instrument he or she did not mean to execute. In such cases, . . . there was no meeting of the minds, . . . in other words, it is not a question of a contract voidable for fraud, but of no contract at all. Fraud in the inducement, by contrast, goes to the means used to induce a party to enter into a contract. In such cases, the party knows the character of the instrument and intends to execute it, but the contract may be voidable if the party's consent was obtained by false representations—for instance, as to the nature and value of the consideration, or other material matters.[57]

---

[54] *Walters v. Sporer*, 298 Neb. 536, 905 N.W.2d 70 (2017); *Eicher, supra* note 7; *Todd Brothers, supra* note 51.

[55] *Gonzalez v. Union Pacific RR. Co.*, 282 Neb. 47, 803 N.W.2d 424 (2011); NJI2d Civ. 15.21.

[56] *Eicher, supra* note 7; *Lippire v. Eckel*, 178 Neb. 643, 134 N.W.2d 802 (1965); *West v. Wegner*, 172 Neb. 692, 111 N.W.2d 449 (1961); *Ward v. Spelts*, 39 Neb. 809, 58 N.W. 426 (1894).

[57] *Gonzalez, supra* note 55, 282 Neb. at 66, 803 N.W.2d at 442. Accord *Heritage Bank v. Bruha*, 283 Neb. 263, 812 N.W.2d 260 (2012).

[34] In this matter, Thomas contends that Eugene was induced into executing the ADR Agreement by GLCV's fraudulent misrepresentation. A fraudulent misrepresentation claim requires a plaintiff to establish the following elements: (1) A representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) the representation was made with the intention that the plaintiff should rely on it; (5) the plaintiff did so rely on it; and (6) the plaintiff suffered damage as a result.[58]

[35-37] Fraudulent misrepresentations may consist of half-truths calculated to deceive, and a representation literally true is fraudulent if used to create an impression substantially false.[59] A plaintiff must show that the defendant intended the plaintiff to rely on a false representation.[60] Whether a party's reliance upon a misrepresentation was reasonable is a question of fact.[61] A party is justified in relying upon a representation made to the party as a positive statement of fact when an investigation would be required to ascertain its falsity.[62] A plaintiff fails to exercise ordinary prudence only when the plaintiff's reliance is wholly unreasonable, given the facts open to the plaintiff's observation and his or her own skill and experience.[63]

---

[58] *deNourie & Yost Homes, supra* note 50; *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 285 Neb. 48, 825 N.W.2d 204 (2013); *Cao v. Nguyen*, 258 Neb. 1027, 607 N.W.2d 528 (2000). See *Hayes v. Equine Equities*, 239 Neb. 964, 480 N.W.2d 178 (1992).

[59] *Knights of Columbus Council 3152 v. KFS BD, Inc.*, 280 Neb. 904, 791 N.W.2d 317 (2010).

[60] *Id.*

[61] *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012); *Cao, supra* note 58.

[62] *InterCall, Inc., supra* note 61; *Schuelke v. Wilson*, 250 Neb. 334, 549 N.W.2d 176 (1996); *Hayes, supra* note 58.

[63] *deNourie & Yost Homes, supra* note 50.

[38] In a fraud case, direct evidence is not essential, but proof of fraud drawn from circumstantial evidence must not be guesswork or conjecture; such proof must be rational and logical deductions from the facts and circumstances from which they are inferred.[64]

We now turn to whether the district court's decision to deny GLCV's motion was clearly wrong.

[39,40] Under Neb. Rev. Stat. § 25-1127 (Reissue 2016), in the absence of a request by a party for specific findings, a trial court is not required to make detailed findings of fact and need only make its findings generally for the prevailing party.[65] In a case tried to the court without a jury, a motion for specific findings of fact pursuant to § 25-1127 must be made before the final submission of the case to the court.[66] Where trial is to the court and no request for specific findings is made, if there is a conflict in the evidence, this court, in reviewing the judgment rendered, will presume that controverted facts were decided by the trial court in favor of the successful party and the findings will not be disturbed unless clearly wrong.[67] In such a case, it is not within the province of this court to resolve conflicts or to weigh evidence.[68]

In the instant matter, the record does not reflect that either party made a request for detailed findings. The trial court, however, did address the issue raised by GLCV's motion and made findings generally in Thomas' favor.

---

[64] *Four R Cattle Co. v. Mullins*, 253 Neb. 133, 570 N.W.2d 813 (1997); *Schuelke, supra* note 62.

[65] See *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993).

[66] *Stuczynski v. Stuczynski*, 238 Neb. 368, 471 N.W.2d 122 (1991).

[67] *Burgess v. Curly Olney's, Inc.*, 198 Neb. 153, 251 N.W.2d 888 (1977); *C. Goodrich, Inc. v. Thies*, 14 Neb. App. 170, 705 N.W.2d 451 (2005).

[68] *Bailey v. Karnopp*, 170 Neb. 836, 104 N.W.2d 417 (1960).

We note that the evidence before the district court consisted of affidavits from Weberg, Eugene, and Thomas, as well the ADR Agreement and Helen's durable power of attorney.

[41] We recently set forth that "under Neb. Rev. Stat. § 25-1244 (Reissue 2016), an affidavit is admissible in certain enumerated situations, including 'motion practice,' which includes the use of affidavits relating to preliminary, collateral, and interlocutory matters."[69] The Nebraska Legislature has authorized the use of affidavits to support a wide range of common civil motions.[70] Congress has provided that unless otherwise expressly provided, any application to the court brought under the FAA shall be made and heard in the manner provided by law for the making and hearing of motions.[71] The policy underlying § 6 of the FAA "is to expedite by ordinary motion practice judicial treatment of matters pertaining to arbitration."[72] For example, over 40 years ago in *Prima Paint v. Flood & Conklin*,[73] in reviewing a claim of fraud in the inducement of an arbitration contract, the U.S. Supreme Court considered affidavit evidence to decide the issue of whether the contract was a transaction in interstate commerce.

[42] Although we are less deferential to a trial court's findings given that the case was presented wholly on documents and affidavit statements rather than through live witnesses, that does not alter our standard of review in this case.[74] Rather, GLCV's burden of proving that the district court's findings

---

[69] *TransCanada Keystone Pipeline v. Nicholas Family*, 299 Neb. 276, 283, 908 N.W.2d 60, 66 (2018).

[70] See Neb. Rev. Stat. §§ 25-1144, 25-1330 to 25-1336, 25-2160, and 25-2301.01 (Reissue 2016 & Supp. 2017).

[71] 9 U.S.C. § 6.

[72] *Tepper Realty Company v. Mosaic Tile Company*, 259 F. Supp. 688, 693 (S.D.N.Y. 1966).

[73] *Prima Paint, supra* note 35.

[74] See *Matter of Bohart*, 743 F.2d 313 (5th Cir. 1984).

were clearly wrong is "''''"to some extent ameliorated.'''''"[75] Even though an appellate court is, in the absence of oral testimony, equally capable as the trial court of examining the evidence and drawing conclusions therefrom and is under a duty to do so, and even though a case was submitted to the trial court without oral evidence, the duty of the appellate court to evaluate the facts does not extend to the right or duty to make an independent evaluation thereof without regard to the findings below. In such a case, an appellate court is loath to overturn the findings of an experienced trial judge unless in the opinion of the court they are clearly wrong.[76]

[43] Thomas adduced evidence that an agent of GLCV made a representation to Eugene that he was required to sign the ADR Agreement in order for Helen to become a resident of the facility. Though Weberg's affidavit stated her belief that this representation was not made, she was not present when the ADR Agreement was signed, and the trial court appears to have given little or no weight to her submission. Further, statements in affidavits as to opinion, belief, or conclusions of law are of no effect.[77]

If the representation was made, the evidence indicates that the representation was false. The language of the ADR Agreement states that execution of the ADR Agreement was not a condition for admission.

There is also evidence that the representation was known to be false when it was made, or was made recklessly. The disclaimer at the top of the first page of the ADR Agreement, written in bold and capitalized letters, suggests that anyone who had an opportunity to read and sign the agreement, including a GLCV staff member, would have known that it was optional.

---

[75] *Id*. at 325 n.12.

[76] *Commercial Standard Ins. Co. v. Universal Underwriters*, 282 F.2d 24 (10th Cir. 1960).

[77] See *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999).

There is also evidence that the false representation was made with the intention that Thomas should rely upon it. Both Eugene and Thomas claimed they were not given an opportunity to review the contract. Eugene stated the staff member handled the paperwork, flipped through the pages, and told him to sign "'here.'" Thomas stated the staff member showed Eugene only the bottom half of the pages. This conclusion is supported by the ADR Agreement itself, because everything other than Eugene's signature appears to have been filled out in advance.

The evidence also indicates that Eugene reasonably relied upon the false representation. Both Eugene and Thomas stated that the staff member claimed these were "'standard forms,'" that she did not provide them with a copy of the ADR Agreement, that she did not explain its legal effect, and that she did not state that it was not required in order to admit Eugene and Helen. Additionally, Eugene stated that he would not have signed the ADR Agreement if he had known it was not mandatory.

Lastly, the evidence shows that Helen suffered damage as a result of the false representation. If GLCV's motion to compel arbitration would be sustained, Thomas, on behalf of Helen's estate, would lose the right to bring suit for her alleged wrongful death.

Recognizing that direct evidence is not required in fraud cases, and viewing the evidence in the light most favorable to Thomas, we find Thomas satisfied each element required for a claim of fraudulent representation and the determination that the ADR Agreement is not binding upon Helen. We conclude from our review that the evidence supports the outcome reached by the district court.

## V. CONCLUSION

In the absence of a contractual provision evidencing clear and unmistakable intent to the contrary, the issue of whether

an arbitration agreement is enforceable is for a court to decide and not an arbitrator. The district court did not err in determining that the ADR Agreement was not binding upon Helen or her estate. We therefore affirm the district court's decision.

Affirmed.

Wright and Kelch, JJ., not participating.