IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

ZIEGLER V. BLOEMER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IAN ZIEGLER AND SIMBA REALTY, L.L.C., A NEBRASKA LIMITED
LIABILITY COMPANY, APPELLEES,

V.

SCOTT BLOEMER AND BEL FURY INVESTMENTS GROUP, L.L.C.,
A NEBRASKA LIMITED LIABILITY COMPANY, APPELLANTS.

Filed May 21, 2019.    No. A-18-007.

Appeal from the District Court for Douglas County: JAMES T. GLEASON, Judge. Affirmed as modified.

Scott E. Daniel, of Gettman & Mills, L.L.P., for appellants.

Douglas W. Ruge II for appellees.

PIRTLE, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Scott Bloemer and Bel Fury Investments Group, L.L.C. (Bel Fury), appeal the order of the Douglas County District Court finding both parties liable to Ian Ziegler for breach of contract and fraudulent misrepresentation in the amount of $46,160. For the reasons set forth below, we affirm the decision of the district court but modify its award for damages.

## STATEMENT OF FACTS

Bloemer is a real estate investor. He owned a controlling interest in Bel Fury's parent company, served as managing member for Bel Fury, and purchased properties at foreclosure or trustee auctions on Bel Fury's behalf. Bloemer would send out daily sales attachments concerning

upcoming auctions to certain individuals. These attachments included background information on real estate designated for auction along with financial information such as the assessed value, opening bid, and monthly rental estimates. Bloemer utilized the attachments to generate interest in properties so that he could gauge whether there was a business interest in subject properties in connection with his own investment.

Bloemer and Ziegler met at a real estate auction. At that time, although Ziegler had a full-time job which prevented him from attending most auctions, during his conversation with Bloemer Zeigler expressed an interest in acquiring properties from trustee's sales. Following their conversation, Ziegler and Bloemer exchanged phone numbers. Ziegler testified that after further conversations and emails with Bloemer, the two came to an arrangement whereby Bloemer would represent Ziegler at auctions. Ziegler testified that, pursuant to the terms of the arrangement, Bloemer would purchase properties at auction on Ziegler's behalf for a fee of $3,000. Ziegler testified that Bloemer never represented that Bloemer would buy properties to sell to Ziegler. Instead, Ziegler testified the arrangement required Ziegler to review property information supplied by Bloemer and to designate those properties in which Ziegler had an interest. Ziegler would then provide Bloemer with a "maximum bid" for Bloemer to utilize in connection with the acquisition of any such property at auction on Ziegler's behalf. Bloemer was to then attend the auction and bid on the property on Ziegler's behalf. If Bloemer was the high bidder, Ziegler was to pay the auction price along with Bloemer's fee.

Bloemer's testimony presented a very different version of their arrangement. Bloemer testified that, when Ziegler expressed interest in a property and provided him with a maximum bid for an auction, Ziegler was actually submitting a bid for acquiring the property directly from Bloemer. Under Bloemer's version, if Bloemer purchased the property at auction, Bloemer would auction the property off among people that he worked with, including Ziegler. He further testified that he discussed bidding on Ziegler's behalf, but told Ziegler he would not do so because he did not believe he was allowed to act as Ziegler's agent without a real estate license. Ziegler purchased three properties through Bloemer under the circumstances described below.

LAFAYETTE PROPERTY

In July 2013, Bloemer recommended that Ziegler consider two separate properties for investment in connection with upcoming auctions. In an email response, Ziegler indicated that he was interested in one of the properties, which was located on Lafayette Street in Omaha, Nebraska (Lafayette Property). Ziegler stated that his "max bid would be 35K." Bloemer purchased the Lafayette Property at auction for $19,670 and responded "Congratulations . . . yours at $35,000. This was a decent call." Bloemer then instructed Ziegler to wire $38,000 to Bel Fury, which amount included Bloemer's $3,000 fee.

18TH STREET PROPERTY

In August 2013, Ziegler and Bloemer were involved in a second transaction involving a property located on 18th Street in Omaha, Nebraska (18th Street property). In connection therewith, Bloemer sent an email to Ziegler which stated:

This deal has a hefty spread, on which we normally get an increased dollar amount [i.e., Bloemer charges a higher fee for Bel Fury], but you need a good kick start and to

begin building an impressive financial for your bank. This is critical to making forward progress. So, we[']re going to give you the meat on this one and accept our $3000 minimum, like on Lafayette. Wire needs to be as follows:

$46,100 (investment cost) + $3000 (Bel Fury) + $30.00 (wire fee) = $49,130.

Ziegler testified that he believed he sent an email to Bloemer with his maximum bid on the 18th street property, but did not specifically remember making a bid of exactly $46,100. However, Ziegler testified that Bloemer always seemed to "magically" get the property for exactly his maximum bid. Bloemer purchased the 18th Street property at auction for $34,001.

### 34TH STREET PROPERTY

Following communications by Bloemer to Ziegler in September 2016 governing investment in a property located on 34th Street in Omaha, Nebraska, (34th Street Property), Ziegler offered a maximum bid of $30,000 but apparently had the numbers in the property address transposed in his email communication to Bloemer. Ziegler testified that he believed that Bloemer's original communication to him had the numbers of the property transposed. In fact, Ziegler's email to Bloemer indicated Ziegler might have the wrong property address and that Ziegler was unable to do more research on the property, but that Ziegler wanted to bid based solely on the information that Bloemer provided.

Bloemer testified that he did not think Ziegler knew the exact house on which Ziegler desired to bid due to the transposed numbers, however he testified that he "just so happened" to purchase that same property at auction. Bloemer claimed that responding to Ziegler's email and attempting to clarify the property in which Ziegler was interested caused him to arrive late at the auction, by which time the 34th Street property had already been sold for $19,000. Bloemer testified that he paid the winners of the auction $5,000 to assign to him the right to buy the 34th Street property for $19,000. Bloemer sent Ziegler the following email:

Ian:

This deal perfectly fits where you are at right now with starting your portfolio: its in really good shape; it has a great equity spread; and, it just came in at a low-dollar entry price.

Funds should be wired to same Great Western Bank account as before:

$30,300 - Base Price;
$ 3,000 - Bel Fury Investments Group;
$     30 - Wire Fees
$   -300 - Overbid
$33,030 - TOTAL DUE.

Please advise when you have sent your wire. Payment needs to be posted with the Trustee by 4:00 p.m. today. As usual, we'll handle all your recording post sale.

[Discussion about deeds for Ziegler's previous purchases.]

Best regards,

Scott

Ziegler testified that Bloemer never told him he was late for the auction or that he had to purchase the property from someone else. Bloemer produced two $2,500 checks he claimed he issued to the parties who prevailed at auction, which checks were admitted into evidence. These checks were both dated September 29, 2013, and the check numbers matched handwritten check numbers on another exhibit where Bloemer testified he made contemporaneous notes governing the transaction.

### ZIEGLER'S DISCOVERY OF AUCTION PRICES

Later, when Ziegler was preparing to refinance the properties, he discovered records containing the properties' original sales prices and realized that Bloemer had charged him more for the properties than he Bloemer had paid for the properties at auction. Ziegler confronted Bloemer who offered to buy back the properties. Ziegler told Bloemer he did not have a problem with the properties, but did have a problem with Bloemer misrepresenting the price. Ziegler testified that, by the date of his discovery, he had repaired the properties and found renters for future investment.

### PROCEEDINGS BELOW

Ziegler filed a complaint against Bloemer and Bel Fury alleging breach of fiduciary duty, material misrepresentation, breach of contract, unjust enrichment, and quantum meruit. Following a trial to the bench, the court found in favor of Ziegler on his breach of contract and fraudulent misrepresentation theories and entered judgment against Bloemer and Bel Fury for $46,160. Bloemer and Bel Fury timely appeal.

### ASSIGNMENTS OF ERROR

Bloemer and Bel Fury assigns that the trial court erred (1) in finding that Ziegler had proven his fraudulent misrepresentation claim, (2) in finding that a valid contract between the parties existed and was breached, (3) in failing to find that the statute of frauds made any contract between the parties unenforceable, and (4) in its calculation of damages.

### STANDARD OF REVIEW

In a bench trial of an action at law, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Liljestrand v. Dell Enters.*, 287 Neb. 242, 842 N.W.2d 575 (2014). In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Hooper v. Freedom Fin. Group*, 280 Neb. 111, 784 N.W.2d 437 (2010). See, also, *Black v. Brooks*, 285 Neb. 440, 827 N.W.2d 256 (2013). In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Black v. Brooks, supra*.

An appellate court independently reviews questions of law decided by a lower court. *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018).

ANALYSIS

FRAUDULENT MISREPRESENTATION

Bloemer first contends that the district court erred in finding that he was liable to Ziegler for fraudulent misrepresentation.

In order to prevail on a claim for fraudulent misrepresentation, the plaintiff must establish the following elements: (1) a representation was made; (2) the representation was false; (3) when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) the representation was made with the intention that the plaintiff should rely on it; (5) the plaintiff did so rely on it; and (6) the plaintiff suffered damage as a result. *Cullinane v. Beverly Enters. - Neb.*, 300 Neb. 210, 912 N.W.2d 774 (2018).

Here, Ziegler testified that Bloemer specifically represented to him that he would act as his agent, for a fee, to procure designated properties for him, at auction, if the properties could be acquired within the price range indicated by Ziegler. Under Ziegler's version of the facts, that representation was false, was known to be false by Bloemer, was made by Bloemer with the intent that Ziegler rely on it, Ziegler did so rely on it, actually wired funds to Bloemer and Bel Fury based upon the terms of what was represented to him to be their deal, and suffered damages as a result. We recognize that Bloemer relayed a different version of the facts at trial. In reviewing a judgment awarded in a bench trial, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party, and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Hooper v. Freedom Fin. Group, supra*. In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. *Black v. Brooks, supra*.

In this case, there was unquestionably a transactional arrangement between Ziegler and Bloemer governing the acquisition of investment property at auction. In fact, Bloemer was involved in acquiring three properties for Ziegler under representations and terms that are disputed. Unlike Ziegler's version of the transaction, Bloemer failed to provide evidence that fit his version of their arrangement. For instance, there was no evidence in the record of a second auction among Bloemer's investors which produced a sale price at Ziegler's "maximum bid." There was sufficient evidence in the record to establish each and every element of material misrepresentation of fact. After reviewing that record, we cannot say that the district court was clearly wrong in its findings. Bloemer's argument must fail.

BREACH OF CONTRACT

Bloemer next contends that the district court erred in finding that he breached a contract with Ziegler because there was no valid contract.

To create a contract, there must be both an offer and an acceptance; there must also be a meeting of the minds or a binding mutual understanding between the parties to the contract. *Gibbons Ranches v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015). A contract is not formed if the parties contemplate that something remains to be done to establish contractual arrangements or if elements are left for future arrangement. *Id*. It is a fundamental rule that in order to be binding, an

agreement must be definite and certain as to the terms and requirements. *MBH, Inc. v. John Otte Oil & Propane*, 15 Neb. App. 341, 727 N.W.2d 238 (2007).

Here, Ziegler testified that Bloemer represented that he would purchase property at auctions for Ziegler for a $3,000 fee per property purchased. Ziegler assented to this arrangement. Each time Ziegler responded that he would like to bid, he accepted Bloemer's offer to act as his agent for that sale. Bloemer's consideration was Ziegler's commitment to pay $3,000 if Bloemer acquired the property. Drawing all reasonable inferences in Ziegler's favor, there was a meeting of the minds between the parties. Three properties were purchased pursuant to a contract between the parties. Bloemer breached this contract by purchasing the properties for lesser prices, then selling the properties to Ziegler at Ziegler's maximum bid price, while also retaining his $3,000 per property fee for acquiring the properties. This assignment of error is without merit.

STATUTE OF FRAUDS

Bloemer next contends that the district court erred in failing to find that any contract between the parties is invalid due to the Statute of Frauds. Bloemer relies on Neb. Rev. Stat. § 36-105 (Reissue 2016) which states that "[e]very contract . . . for the sale of any lands, shall be void unless the contract or some note or memorandum thereof be in writing and signed by the party by whom the . . . sale is to be made."

Contrary to Bloemer's assertion, the contract between Ziegler and Bloemer was not a contract for the sale of land. The contract the district court found to exist was a service contract for Bloemer to serve as Ziegler's agent to make purchases on his behalf. The fee for that service was $3,000 per transaction. Because the contract was a service contract and not a contract for the sale of lands, the statute of frauds has no application.

DAMAGES

In Bloemer's final assignment of error, he alleges that the trial court erred in the computation of damages. The trial court awarded judgment for Ziegler in the amount of $46,160. Those damages appear to be calculated as follows:

| Property | Auction Price | Price Bloemer Charged Ziegler | Difference |
|---|---|---|---|
| Lafayette | $19,670 | $38,000 | $18,330 |
| 18th Street | $34,001 | $49,130 | $15,129 |
| 34th Street | $19,000* | $33,030 | $14,030 |
| TOTAL | | | $47,489 |

*The auction price on the 34th Street property did not include the $5,000 assignment fee paid by Bloemer.

The trial court appears to have calculated damages on the basis of the difference between the price at which the properties were purchased at auction and the price Bloemer charged Ziegler. The court entered an award for $46,160, which was the amount pled in the complaint. The actual evidence indicates a difference between the auction price and the sales price, including Bloemer's fee, of $47,489. Bloemer argues that, even if the court adopted Ziegler's version of the alleged

- 6 -

contract, or the theory of material misrepresentation of fact, Bloemer was at least entitled to a $3,000 fee for purchasing each of the three properties on Ziegler's behalf.

Ziegler agrees that he was to be charged a $3,000 fee by Bloemer and appears to recognize that, had Bloemer honored the original contract, Ziegler would have owed Bloemer $9,000 in fees. The amount Bloemer charged Ziegler, stated above, includes the $3,000 service fee to which Bloemer was legally entitled. After adjusting for the fee, Bloemer's conduct actually amounted to $38,489 in damages and not the $46,160 that Ziegler had pled. Notwithstanding that calculation, Ziegler argues that under the Nebraska Supreme Court's ruling in *State, ex rel. Nebraska State Bar Ass'n, v. Bachelor*, 139 Neb. 253, 297 N.W. 138 (1941), Bloemer is not entitled to retain his $3,000 fee and forfeited his right to claim it. However, under the circumstances presented in the instant case, a correct statement of the rule governing damages is set forth in *Huffman v. Poore*, 6 Neb. App. 43, 58, 569 N.W.2d 549, 560 (1997), wherein this court stated:

> One who has been induced to enter into an agreement by virtue of a material misrepresentation, that is to say, by virtue of fraud, may either affirm the agreement and sue for damages or disaffirm the agreement and sue to be reinstated to his or her position as it existed before entry into the contract. *Tobin v. Flynn & Larsen Implement Co.,* 220 Neb. 259, 369 N.W.2d 96 (1985). This is so because one remedy, damages, depends upon the existence of a contract, and the other, rescission, depends upon the concept that because of the fraud no contract came into existence. *Id.* Huffman elected to affirm the agreement, and thus he is entitled to recover such damages as will compensate him for the loss or injury actually caused by the fraud and place him in the same position as would have existed had there been no fraud. See *Alliance Nat. Bank v. State Surety Co., supra.*

Like the circumstances in *Huffman*, here Ziegler elected to affirm the agreement with Bloemer and thus he is entitled to recover damages as will compensate him for the loss or injury actually caused by the fraud, that is, that which will place him in the position as would have existed had there been no fraud. Had there been no fraud here, Ziegler would have paid Bloemer the $9,000 in fees that were the basis of his bargain with Bloemer. Accordingly, the district court erred in allowing Ziegler to recover the $9,000 in fees that he was required to pay Bloemer for his services. After adjusting for Bloemer's fee, Ziegler's damage award is $38,489.

Bloemer next argues that he actually presented the 18th Street property and the 34th Street property to Ziegler after he acquired them. He argues that, unlike the Lafayette property, these properties were not part of their original arrangement and the district court should not have awarded damages to Ziegler on the basis of the original arrangement. To the contrary, Ziegler testified that he thought that the 18th Street property and the 34th Street property were being presented to him prior to auction and that he provided "maximum bids" just like he did with the Lafayette property. The district court, in its award, adopted Ziegler's version of the facts and the court was not clearly erroneous in doing so. Bloemer's argument is without merit. Additionally, in assessing damages for the 34th Street property, the court computed damages by utilizing the $19,000 auction price rather than the price Bloemer alleged he paid for the 34th Street property which included a $5,000 assignment fee. We recognize Bloemer argues that he paid the additional cost to acquire the property post auction, but the evidence which supported his theory was

questionable. The district court appears to have concluded that Bloemer was not entitled to an additional $5,000 for costs spent in acquiring the 34th Street property, and, after reviewing the record, we cannot say the district court was clearly wrong in its findings.

As such, we affirm the district court in finding that Ziegler was entitled to damages due to Bloemer's material misstatement of fact and because Ziegler elected to affirm their contract, Bloemer was obligated to compensate Ziegler by placing him in the position as would have existed had there been no fraud. In order to restore Ziegler to his rightful financial position he would have been in, we modify the district court's damage award by reducing the award to $38,489 to reflect Bloemer's $9,000 in fees for acquiring the various properties for Ziegler.

## CONCLUSION

In sum, we affirm the district court's finding that Bloemer and Bel Fury are liable to Ziegler for breach of contract and material misrepresentation. However, we modify the district court's award of damages to $38,489.

AFFIRMED AS MODIFIED.